SAMUEL COMLY,

*vs.*

JOHN WATERS, THOMAS LAIRD, MICHAEL McMAKIN, ROBERT BURGESS AND DENNIS KELLY.

*New Castle, Feb. T.* 1840.

An inquiry, whether there was any and what consideration existing at the time of the execution of a certain writing obligatory, does not present a sufficiently distinct fact to be the subject of an issue out of Chancery, for trial by a jury.

The Chancellor will not, upon application, order issues for trial by a jury respecting facts not material, in his judgment, to a decree in the cause.

A debtor in failing circumstances gave his bond to one creditor to secure a debt due to such creditor, and as to the balance under a parol trust to pay certain other creditors, per schedule. *Held,* void as to the other creditors, who were not named in the bond and with whom there was no communication.

Such a transaction does not create a trust in favor of the creditors. The bond is revocable at the will of the obligor ; and it is prohibited by the Statute of Frauds.

A bond given by a debtor in failing circumstances, covering all his property for the benefit of preferred creditors, is contrary to the policy of the Statute against fraudulent insolvency.

BILL IN EQUITY.—The case made by the bill was as follows:—The defendants, Waters and Laird, together with one Moses Redpath, were engaged in the manufacture of cotton goods on the Brandywine, prior and up to the year 1837, when they failed in business. Before their failure the complainant, a commission merchant in the city of Philadelphia, had been their agent for the sale of goods, and had from time to time advanced considerable sums of money and incurred responsibilities for them, which at the date of the failure amounted, with interest, to $65,922.05.

Previously to the accruing of this large indebtedness, to wit, on the 21st of February, 1834, the complainant had taken the bond of Waters, Laird and Redpath, with a warrant of attorney for the confession of judgment, conditioned for the payment of the real debt of $15,000, and with an agreement thereon indorsed, under which the bond, and any judgment to be entered thereon, were to stand as a security for such sums as should at any time be due to the complainant for advances to be made to the obligors or responsibilities to be incurred for them. On the 20th of November, 1838, judgment was entered upon the bond and a *fieri facias* for $18,000 was issued and returned to the May Term 1838, as levied upon certain goods, chattels and machinery of the defendants in the execution. The goods levied upon were subject to a prior levy. made under a *fieri facias* returnable to the May Term, 1837, issued upon a judgment which had been entered (April 20th, 1836,) on a bond given by Waters, Laird and Redpath to the other defendants, McMakin, Burgess and Kelly, for $18,690.63. The goods were afterward sold under this execution for $16,659.06.

The bill alleged the above stated facts, and charged that the bond to McMakin, Burgess and Kelly was without any consideration beyond the sum of $400, which was due from the obligors to Kelly, one of the obligees; and the complainant claimed, as applicable to his execution, the whole proceeds of the goods except the said sum of $400 due to the defendant Kelly and $2000 in arrear for rent of the premises occupied by the debtors in the execution at the time of the levy.

The answer of Waters and Laird admitted that in the Spring of 1821 they, together with Redpath, became partners in the cotton spinning business on the Brandywine; that they executed a bond to the complainant under the circumstances and for the amount alleged in the bill. It

alleged that they were not, at the date of the bond, indebted to the complainant, but that the bond was given to secure the complainant for future advances and responsibilities; that at the time of their failure they were not indebted to the complainant upon full settlement, in more than $15,000; that their original partnership expired in 1836, after which the business was carried on by Waters and Laird, as partners. These defendants further admitted the execution of the bond to McMakin, Burgess and Kelly, as alleged in the bill, and that there was, at the giving of said bond, no indebtedness from them to the obligees therein except in the sum of $400 to Kelly; but they alleged that, with respect to the excess of the bond above the $400 due to Kelly, it was given under a parol agreement between the parties to the bond that such excess was to be for the benefit of certain other creditors of Waters and Laird, of whose debts and the several amounts thereof a written schedule was annexed to the bond. The complainant, Comly, was not among the scheduled creditors.

The answer of McMakin, Burgess and Kelly admitted the facts in the bill alleged, so far as concerned their own transactions; and it also set forth the consideration of the bond given to them by Waters and Laird, in substantially the same manner as did the answer of those defendants.

It was not alleged, in either of the answers, that the scheduled creditors, or any of them, were parties or privies to the agreement under which the bond to McMakin, Burgess and Kelly was given; nor was there any proof to that effect.

· The cause came before the Chancellor, at the February Term 1840, for a hearing upon the bill, answers, exhibits and depositions.

*W. H. Rogers*, for the complainant.

*J. A. Bayard* and *J. Booth*, for the defendants.

The case was opened by the reading of the bill and answers, and also of the exhibits and depositions on the part of the complainant. At this stage of the proceedings the solicitors for the defendants moved the Chancellor to order that certain issues of fact arising in the cause be tried by a jury at the bar of the Superior Court. The issues so applied for were as follows; viz :

1st. Whether there was any and what consideration existing at the time of the execution of the writing obligatory, in the pleadings mentioned, by the said John Waters and Thomas Laird to the said Michael McMakin, Dennis Kelly and Robert Burgess ?

2d. Whether the debts mentioned in the schedule annexed to the defendants' answer constituted the consideration of the said writing obligatory; and whether the said debts were *bona fide* due and owing by the said John Waters and Thomas Laird ?

3d. Whether the partnership existing between Thomas Laird, John Waters and Moses Redpath was dissolved, and at what time the same was dissolved ?

4th. Whether the interest of Moses Redpath in the property of the said firm of Waters, Laird and Redpath was sold and assigned at any, and what time, and for what consideration, to Thomas Laird and John Waters, or either of them ?

JOHNS, JR., CHANCELLOR.—The application I consider as made in time ; but while I recognize the right of the party to have an issue upon matters of fact arising out of the case at the hearing, I must confine the exercise of the right to facts, and cannot extend it, so as to constitute the jury an organ of inquiry to ascertain whether any and what consideration existed. Hence, upon the first proposition, as it alleges no distinct fact, I cannot order an issue upon it.

With respect to the second proposition—as to the existence of the debts as set forth in the schedule, and whether they constitute a part of the consideration of the said writing obligatory—I am inclined to the opinion that the proposed inquiry does not present such a fact or facts as were intended to be embraced by the legislative provision.

The fact or facts must be such as would, when established, be available in supporting a consideration, so as to establish the indebtedness of Waters and Laird to the execution creditor; and this cannot depend on their indebtedness to third persons; nor could such a fact, if established, have any effect upon the amount of their indebtedness to the defendants, McMakin, Burgess and Kelly. If suit were pending at law upon the written instrument, and the question of consideration were open, it could not be allowed the party to establish the fact of indebtedness to him by evidence showing that Waters and Laird were also indebted to fifty other persons; nor could a judgment at law have been obtained on the writing obligatory by suit, so as to secure or authorize the recovery by execution of any sum beyond what was actually the real debt from Laird and Waters to the present defendants, McMakin, Burgess and Kelly. Hence, the second proposition does appear to me, in reference to the matter and cause to be heard and determined in this Court, to be altogether immaterial; as the same matter, if it could be tendered as an issue at law, would be an immaterial issue.

The same remark appears to me equally applicable to the third and fourth propositions. They relate to facts which I do not consider I am called upon in this cause to determine, and are therefore unnecessary to be ascertained by a jury.

Upon the refusal of the Chancellor to direct the trial of issues of fact, the hearing of the cause proceeded; the ex-

hibits and depositions on the part of the defendants being read and the cause argued by the solicitors of the respective parties.

JOHNS, JR., CHANCELLOR.—In this case the complainant charges, by his bill, that the judgment on which the defendants' execution issued, to levy and collect $18,000, was without consideration, except or beyond the sum of $400; that being the whole amount of debt due from the firm of Laird and Waters to one of the other defendants.

The answer admits that no more than $400 was due, as stated in the bill of complaint; but it insists that the excess was, by a parol agreement between the obligor and obligee in the bond, intended to secure certain other creditors of Laird and Waters, according to the schedule showing their names and the amount respectively due them, allowing only fifty per cent. to be applied to a specific sum due from Laird and Waters as indorsers of notes given to Comly, the complainant. The answer further admits their indebtedness to the complainant, who is a judgment and execution creditor, to the amount of about $15,000. It is not alleged in the answer, that the scheduled creditors were either parties or privies to the bond, judgment or execution. The only question necessary to be considered and decided in this case is the right of the defendants, McMakin, Burgess and Kelly as execution creditors. It is manifest and admitted that there is no indebtedness, except to one, that is, Kelly, and that no more is due to him than $400. Can the execution be available to collect more than the debt due to the creditor who is a party and privy? or, can the excess beyond the debt due to the obligee be collected and legally held under the execution for the benefit of other creditors of the obligor, who are neither parties nor privies to the bond, judgment or execution? Unless their debts can be incorporated into the

consideration of the bond, (supposing the transaction to be without the other ingredient, which shows that the obligors apprehending insolvency resorted to this as a mode of preferring their scheduled creditors,) it must necessarily follow that the persons named in the bond as obligees, and who at law stand on the record as the judgment and execution creditors, their debt being paid, could not hold the surplus as belonging to them. It would, by the process of law, supposing the Sheriff to have paid the whole amount over into the hands of McMakin, Burgess and Kelly under the execution, have no greater force or effect than would take place if the firm of Laird and Waters had delivered over to McMakin, Burgess, and Kelly a similar amount in cash, directing them to pay certain creditors. In such a case, until the agent actually applies the fund, there is no payment; and if the agent or depositary should misapply the fund or waste or lose the same it would not affect the right of the unpaid creditors; nor would the delivery by the debtor to his own selected and appointed agent prevent the creditors from suing and collecting their debts from the debtor. This being so, it must be admitted that as to a fund thus placed in the hands of a stranger, to be applied in the payment of debts, whether it be so done either by actual delivery over by the debtor or by means of a bond, judgment and execution, which authorizes under legal proceedings the acquisition of the fund, the result is precisely the same in all cases in which the creditors are not parties and privies to the transaction. With respect to the contract authorizing the agent or depositary to collect or obtain possession of the fund, if the creditors be not parties or privies, I cannot perceive how their debts can possibly constitute the consideration of the contract. The right of property still remains in the debtor, and he remains liable to all risk ; and hence he retains the control and the power of revocation. If it is asked who is, under such circumstances, the *cestui*

*que trust*, it can be none other than he who has the beneficial interest in the fund. Hence, under the circumstances I have supposed, where the creditors are neither parties nor privies, that person must be the owner of the fund who either delivered it over or authorized the person to whom it was not owing to use legal process to obtain the possession. Being the person retaining the right of property, the legal possession of which is in another, he must be the person beneficially interested, and consequently the *cestui que trust*.

That this is the true relation of the parties in such a transaction is now settled by the modern decisions relative to assignments to pay creditors, not parties and privies, but enumerated in a schedule, or where they are named as parties but they are not privies. In such cases it is held that the assignment is voluntary and that the creditor's debts constitute no part of the consideration. Formerly, it was considered that they constituted a meritorious consideration. In a case before Lord Keeper Bridgman it was doubted whether a conveyance for payment of debts, made voluntarily and no creditors named in the deed, was revocable by the grantor; and the Court, with the assistance of the judges, was clearly of opinion that the deed was founded on a just and honest consideration, and that the creditors were *cestuis que trust* and might compel the execution. 1 *Chan. Rep.* 30; 1 *Ch. Ca.* 249. But in a case before Lord Eldon, where the creditors were scheduled to the deed, though neither parties nor privies to it, the instrument was held to be revocable. 3 *Mer. R.* 707; 3 *Sim. R.* 1. And so it was determined in a more recent case, where the creditors were parties to the deed but not privies to it. 3 *Sim. R.* 1; 2. *M. & K.* 492; 4 *Russ R.* 24. And the principle upon which the modern doctrine proceeds is reasonable enough; "for where," observed Sir L. Shadwell, " a person without the privity of any one, without receiving

consideration, and without notice to any creditor, makes a disposition, as between himself and trustees, for payment of debts, he is merely directing the mode in which his own property shall be applied, for his own benefit; and the general creditors named in the schedule are merely persons named there for the purpose of showing how the trust property shall be applied." 3 *Sim. R.* 12. " The deed merely operates," said Sir J. Leach, " as a power to the trustees, which is revocable by the debtor ; and it has the same effect as if the debtor had delivered money to an agent to pay his creditors, and before any payment made by the agent or communication by him to the creditors had recalled the money so delivered. *Acton vs. Woodgate,* 2 *M. & K.* 495. And the present Lord Chancellor, when Master of the Rolls, in the case of *Bill vs. Cureton,* 2 *M. & K.* 511, observed that, according to *Walwyn vs. Coutts,* and *Garrard vs. Lord Lauderdale,* the character of trustee and *cestui que trust* never existed between the creditor and the trustees ; for the settlor himself was the only *cesui que trust;* and, therefore, he was entitled to direct the application of the trust fund. The rule is adopted to promote the views and intentions of the parties. A man who, without any communication with his creditors, puts property into the hands of trustees for the purpose of paying his debts, proposes only a benefit to himself, and not to his creditors. It would be a result most remote from the contemplation of the debtor, if it should be held that any creditor, discovering the transaction, should be able to fasten upon the property and invest himself with the character of *cestui que trust.* The case of *Garrard vs. Lord Lauderdale* involved the additional circumstance of a subsequent communication from the trustees to the creditors of the contents of the trust deed ; but the Court was of opinion, as appears right upon principle, that the revocable nature of the instrument was not thereby destroyed. 3 *Sim. R.* 12.

Considering the judgment and execution held by the

present defendant as having accomplished all it was intended to effect, it could do no more than occasion a transmutation of the possession of the property, without affecting the right of property in the surplus, over and above the amount of $400, due to one of the defendants. The surplus in their hands must necessarily belong to Waters and Laird until actually applied in payment. The question occurs, what is to direct and control this payment? The answer alleges the parol agreement, in connection with the schedule annexed; but, independent of the objection to the transaction arising out of the circumstance of the other creditors not being parties or privies, it does appear to me impossible that the parol agreement can, under the circumstances of this case, be allowed to have any effect. Had it been in writing it could not avail without expressly violating the law of this State relative to cases of this character, when the debtor, apprehensive of utter ruin and insolvency, attempts, either by parol or writing, to direct the appropriation of his property, not for the equal benefit of all his creditors but for the avowed purpose of prejudicing the rights of one, and by the schedule annexed giving a preference. If such a transaction should be permitted to stand, or be entertained by a court of equity, it would altogether defeat the object intended to be effected by the law of this State, which declares, that " if any person or persons, in contemplation of insolvency, or in contemplation of taking the benefit of the insolvent laws of this State, make an assignment of his, her or their estate or effects, for the benefit of his, her or their creditors, and in or by such assignment, either under the provisions thereof or otherwise, shall prefer any one or more creditor or creditors to another or others, or shall, in or by such assignment, secure or pay to any one or more creditor or creditors a greater proportion of his or her debt or demand, than shall be secured or paid to each and every the creditor and creditors of the person or persons making

such assignment, every such assignment, so preferring one or more creditor or creditors to another creditor or other creditors, shall be deemed fraudulent and absolutely void."

It is manifest that this act was passed, not to prevent assignments but to prevent persons, in contemplation of insolvency, either by assignment or otherwise, doing any act to prefer creditors, or through the intervention of a trust so to appropriate their property as to effect an unequal distribution thereof.

The present case I consider an attempt to evade the provisions and counteract the whole object and policy of the act; and, therefore, so far as the judgment and execution have been used for the purpose of obtaining the fund to be distributed, as directed by the obligor, in such manner as to give a preference, whether the directions be verbal or in writing, in either case I consider the transaction within the provisions of the act and *pro tanto* fraudulent and void.

I am, therefore, of opinion that the defendants, McMakin, Burgess and Kelley, are not entitled to recover, under the execution, a sum beyond the amount due to Kelley, one of the obligees, which by the bill is stated to be $400, and by the answer admitted as the only amount due.

It is, therefore, ordered by the Chancellor that a perpetual injunction issue, enjoining and restraining the defendants from receiving, under the said judgment or execution, any further sum than the $400, due to the defendant Kelly, with interest thereon, and the costs accrued upon the judgment and execution; the costs in this cause to be paid by defendants.

Decree affirmed by the Court of Errors and Appeals, at the June T. 1840.   3 *Harring. R.* 117.